1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

# UNITED STATES  DISTRICT COURT

## Northern District of California

### San Francisco Division

KAYLE HOWARD,

               Plaintiff,

    v.

MICHAEL DALISAY *et al.*,

               Defendants.

_____/

No. C 10-05655 LB

**ORDER GRANTING DEFENDANTS'**
**MOTIONS TO DISMISS**

[Re: ECF Nos. 112, 118]

## INTRODUCTION

On or about March 11, 2010, Alameda County Sheriff's Office ("ACSO") deputies Michael Dalisay and Fenton Culley arrested Kayle Howard based on an outstanding arrest warrant for forgery.  That warrant was issued based in part on the investigation of Officer Melvin Smith of the San Pablo Police Department.  Deputies Dalisay and Culley took Ms. Howard to Santa Rita Jail, where she was questioned by Detectives David Neece and [FNU] Pamplona of the San Pablo Police Department.  She was released on March 18, 2010 and subsequently charged with, and convicted of, criminal violations related to forgery in Contra Costa County Superior Court.

Ms. Howard, who is proceeding *pro se*, filed the instant action against the ACSO and Deputies Dalisay and Culley (collectively, the "ACSO Defendants") as well the City of San Pablo, Officer Smith, and Detectives Neece and Pamplona (collectively, the "San Pablo Defendants") for false arrest and false imprisonment in violations of her Fourth Amendment and Fourteenth Amendment

substantive due process rights, and for depriving her of her possessions in violation of her

Fourteenth Amendment procedural due process rights, pursuant to 42 U.S.C. § 1983 and *Monell v.*

*Dep't of Soc. Servs*, 463 U.S. 658 (1978).

The San Pablo Defendants answered her original complaint, but the ACSO Defendants moved to

dismiss it.  The court granted the ASCO Defendants' motion, dismissed with prejudice Ms.

Howard's Fourteenth Amendment substantive due process claim, and dismissed without prejudice

her Fourth Amendment, Fourteenth Amendment procedural due process, and *Monell* claims.  The

court gave her leave to file a First Amendment Complaint.

She did, and now the ACSO Defendants and the San Pablo Defendants move to dismiss it.  Upon

review of the papers submitted, the arguments of the parties at the January 16, 2014 hearing, and

consideration of the applicable authority, the court **GRANTS** Defendants' motions and

**DISMISSES WITH PREJUDICE** all of Ms. Howard's claims.

## STATEMENT

In its October 16, 2013 order granting the ACSO Defendants' motion to dismiss, the court

previously summarized the allegations in Ms. Howard's original complaint as follows:

> On or about March 11, 2010, Ms. Howard had an interaction with Deputies Dalisay and Culley.  Complaint, ECF No. 1 ¶¶ 14-17.[1]  According to her complaint, "she was told she was reported to the police for a noisy car alarm."  *Id.* ¶ 15.  She then "pointed out that the no[i]sy vehicle did not belong to her."  *Id.*  One of the Deputies then "told her that she had an outstanding warrant issued by the City of San Pablo."  *Id.* ¶ 15.  The Deputies then "detained [her] for no reason and transported her to Santa Rita Jail."  *Id.* ¶ 14.
>
> It turns out that there was, in fact, an outstanding warrant for her arrest.  Roughly two months earlier, on January 12, 2010, Judge Trevor White of the Contra Costa County Superior Court issued a warrant for Ms. Howard's arrest for forgery in violation of California Penal Code § 476.[2]  MacKay Declaration, Exh. 1, ECF No. 94-

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

[2] California Penal Code § 476 provides in full: "Every person who makes, passes, utters, or publishes, with intent to defraud any other person, or who, with the like intent, attempts to pass, utter, or publish, or who has in his or her possession, with like intent to utter, pass, or publish, any fictitious or altered bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of any real or fictitious financial institution as defined in Section 186.9 is guilty of forgery."

UNITED STATES DISTRICT COURT
For the Northern District of California

1;[3] *see* Complaint, ECF No. 1 ¶ 17 (acknowledging the existence of the warrant for her arrest).

Back to March 11: Ms. Howard alleges that when the Deputies arrested her, "they left a person inside her home." Complaint, ECF No. 1 ¶ 17. She told one of the Deputies that the person "did not live at her address" and that "she did not want that person to remain inside her home as she had valuables that she feared the unwarranted person would steal." *Id.* The Deputy "ignored her request and left her residence unsecured with the person inside." *Id.*

She was taken to Santa Rita Jail and held in custody for eight days. *Id.* ¶¶ 18, 19. She alleges she was held there by Detectives Neece and Pamplona, *id.* ¶ 18, and that she "learned that Officer [] Smith of the San Pablo Police Department caused her arrest by submitting [her] DMV photograph to witnesses and suggesting that the person who passed the bad checks was in fact [her]," even though Officer Smith "had reason to suspect that [she] was in any way connected to the underlying criminal incident," *id.* ¶ 20.[4] On March 18, 2010, she was released without being charged with

_____

[3] In support of their motion, the ACSO Defendants asked the court to take judicial notice of the warrant for Ms. Howard's arrest. First Request for Judicial Notice, ECF No. 93. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A "high degree of indisputability is the essential prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a) & (b) advisory committee's notes (emphasis added). A court, then, may take judicial notice of undisputed facts contained in public records, but it may not take judicial notice of disputed ones. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v. California*, C-10-1449-SBA, 2011 WL 873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request for judicial notice of an address contained on a complaint filed in another case because the "underlying facts relevant to Plaintiff's residence are disputed and otherwise do not meet the requirements of Rule 201"); *Lee v. Bender*, C-04-2637-SBA, 2005 WL 1388968, at *8 (N.D. Cal. May 11, 2005) ("Court filings and orders are the type of documents that are properly noticed under Federal Rule of Evidence 201. Notice can be taken, however, 'only for the limited purpose of recognizing the judicial act that the order [or filing] represents on the subject matter of the litigation.'") (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation and internal quotation marks omitted). Here, while Ms. Howard may have been challenging the accuracy of the evidence submitted in support of probable cause, *see* Complaint, ECF No. 1 ¶ 22 (alleging that "the City of San Pablo" might have "issued a warrant[] based upon false information"), she did not appear to attack its existence, *see id.* ¶ 17 ("On or about March 1, 2010, [Ms. Howard] learned that a Contra Costa County Judge issued a Ramey Warrant for [her] arrest after she was allegedly positively identified as a person who illegally cashed one or more checks."). Thus, because the warrant is a public record and Ms. Howard did not contest its existence, the court took judicial notice of it.

[4] Ms. Howard erroneously sued Officer Melvin Smith as "Susan Smith" and Detective Pamplona as Detective "Pamploma." *See* Answer (Detectives Neece and Pamplona, Officer Smith),

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    a crime, *id.* ¶¶ 18, 19, and when she returned home, she noticed that "her valuables

2    were missing," *id.* ¶ 21.

3    10/16/2013 Order, ECF No. 103 at 2-3.

4        On December 13, 2010, Ms. Howard sued Defendants in this court pursuant to 42 U.S.C. § 1983.

5    *See generally id.*  She explicitly brought claims against Defendants for false imprisonment and false

6    arrest in violations of her Fourth Amendment and Fourteenth Amendment substantive due process

7    rights, and for depriving her of her possessions in violation of her Fourteenth Amendment

8    procedural due process rights, and she also brought a *Monell* claim against the ACSO for failing to

9    "properly supervise" and "train its deput[ies]" and because it has a "practice of making unreasonable

10   arrests."  Complaint, ECF No. 1 ¶¶ 23, 26; *see Monell*, 463 U.S. 658.  She may also bring a claim

11   related to the alleged loss of her "valuables."  *Id.* ¶¶ 17, 21.[5]  Ms. Howard said that she sued "both

12   the County of Alameda and the City of San Pablo because she does not know if the Alameda County

13   Sheriff's Department fabricated the story about the warrant or if the City of San Pablo issued a

14   warrant[] based upon false information," but "[o]bviously, one or the other is liable for her injuries."

15   *Id.* ¶ 22.

16       The San Pablo Defendants answered Ms. Howard's original complaint.  *See* Answer (City of San

17   Pablo), ECF No. 17; Answer (Detectives Neece and Pamplona, Officer Smith), ECF No. 50.  The

18   ACSO Defendants, however, moved to dismiss it.  Original Motion to Dismiss, ECF No. 19.  The

19   court never heard the motion; instead, upon Defendants' unopposed motion, the court stayed the

21   ECF No. 50.

22       [5] Near the outset of her original complaint, Ms. Howard alleged that "[t]his action is brought

23   pursuant to 42 U.S.C. sections 1983, et seq. and 1988, and the California Constitution, civil rights

     statutes and common law."  Complaint, ECF No. 1 ¶ 6.  In its October 16. 2013 order, the noted that

24   while the Ninth Circuit has made clear that notice pleading merely requires the plaintiff to set forth

     in his complaint claims for relief, not causes of action, statutes or legal theories, *Alvarez v. Hill*, 518

25   F.3d 1152, 1157-58 (9th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)), Ms. Howard made no further

26   mention of these authorities, *see generally* Complaint, ECF No. 1, and her allegations in support of

     her § 1983 claims did not raise a plausibly suggest a right to relief under them, *see Bell Atl. Corp. v.*

27   *Twombly*, 550 U.S. 544, 570 (2007).  Thus, to the extent that Ms. Howard intended to bring claims

     under 42 U.S.C. § 1988, "the California Constitution, civil rights statutes and common law," the

28   court dismissed without prejudice those claims.  *See* 10/16/2013 Order, ECF No. 103 at 4 n.6.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   action pending the criminal proceedings against Ms. Howard stemming from her arrest and denied

2   without prejudice the ACSO Defendants' motion to dismiss.  Order Staying Case, ECF No. 58;

3   Order Denying Original Motion to Dismiss, ECF No. 66; *see* Blechman Declaration, ECF No. 120,

4   Ex. B, ECF No. 120 at 8-11 (criminal complaint in *People v. Howard*, No. 305554-8 (July 26,

5   2010)).[6]  Ms. Howard's criminal proceedings were continued multiple times, *see*, *e.g.*, June 24, 2013

6   Order, ECF No. 83, but finally were resolved on or before August 23, 2013, *see* Joint Status Update,

7   ECF No. 86 (filed on August 23, 2013; noting that Ms. Howard's criminal proceedings have been

8   "completed").  After a trial, a jury found her guilty of five crimes: (1) "forgery–falsely making,

9   altering, passing documents" in violation of California Penal Code § 470(d); (2) "2nd degree

10  commercial burglary" in violation of California Penal Code §§ 459 and 460(b); (3) "possessing

11  forged instrument" in violation of California Penal Code § 475(a); (4) "attempted petty theft" in

12  violation of California Penal Code §§ 484, 488, and 664; and (5) "making, possessing, and uttering

13  fictitious instrument" in violation of California Penal Code § 476.  Blechman Declaration, Ex. C,

14  ECF No. 120 at 12-16.

15      The court thereafter lifted the stay of the case, Order Lifting Stay, ECF No. 90, and on

16  September 9, 2013 the ACSO Defendants filed a new motion to dismiss, Motion, ECF No. 91.  On

17  October 16, 2013, the court granted their motion, dismissed with prejudice Ms. Howard's Fourteenth

18  Amendment substantive due process claim, and dismissed without prejudice her Fourth Amendment,

19  Fourteenth Amendment procedural due process, and *Monell* claims.  10/16/2013, ECF No. 103.  The

20  court gave her leave to file a First Amendment Complaint.  *Id.* at 9.

21      She did so on November 26, 2013.  First Amended Complaint, ECF Nos. 109 & 109-1.  The

22  document she filed consists of sixty-one pages.  *See id.*  Nine of those pages contain factual

23  _____

24      [6] In support of their motion, the San Pablo Defendants ask the court to take judicial notice of
    four documents: (1) the warrant for Ms. Howard's arrest; (2) the criminal complaint in *People v.*
25  *Howard*, No. 305554-8 (July 26, 2010); (3) the jury verdict against Ms. Howard in *People v.*
    *Howard*, No. 305554-8 (June 28, 2013); and (4) the clerk's docket and minutes in *People v.*
26  *Howard*, No. 305554-8 (July 2, 2013).  Second Request for Judicial Notice, Exs. A-D, ECF No. 120.
    As noted above in Footnote 3, the court already took judicial notice of the warrant.  The three other
27  documents are all public records that may be judicially noticed, see *Lee*, 250 F.3d at 689-90, and
    Ms. Howard does not challenge their authenticity.  The court thus takes judicial notice of them.
28

UNITED STATES DISTRICT COURT
For the Northern District of California

allegations, some of which relate to the her claims here and most of which appear to relate to other wrongs allegedly committed against her by third parties at various times in her life. *See id.*, ECF No. 109 at 1-9. The remaining fifty-two pages are copies of various documents, most of which appear to relate to her medical and employment histories. *See* First Amended Complaint, ECF No. 109 at 10-37; *id.*, ECF No. 109-1 at 1-24. And although her caption lists only Deputies Dalisay and Culley, Officer Smith, and Officers Neece and Pamploma as defendants, she also alleges that she suffered damage that was caused by the ACSO and San Pablo Police Department. *Id.* at 109 at 1-2.

Ms. Howard does not allege as many facts about her arrest in her First Amended Complaint as she did in her original complaint. *See id.* at 2-9. She does allege, however, that on March 11, 2010 she "returned to her residence and various persons were upset because her car alarm apparently was "going off." *Id.* at 6. She also alleges that Deputies Dalisay and Culley "illegally confiscat[ed] my keys to my vehicle and my residence and [told] me that I did not need any key[s] to my property [and] then proceed[ed] to tell James Barker that he better stay in my home[,] which I do not allow when I [am] not at home." *Id.* at 2. She also alleges that on May 12, 2010, two individuals were arrested and that those individuals had stolen her identity. *Id.* at 9. Finally, she alleges that "all parties involve[d] knew I had [n]o parts in any [c]riminal [a]ct[ion] being done prior to" March 11, 2010. *Id.* at 2. Ms. Howard does not mention any specific statutes or violations of law, *see generally id.*, but the court assumes that she means to reallege her Fourth Amendment, Fourteenth Amendment procedural due process, and *Monell* claims.

On December 5, 2013, the ACSO Defendants moved to dismiss Ms. Howard's First Amended Complaint pursuant to Rule 12(b)(6). ACSO Defendants' Motion to Dismiss FAC, ECF No. 112. On December 12, 2013, Ms. Howard filed a one-page document titled "Plaintiff['s] Response for Motion Hearing 01/16/2014 at 9:30 on 15th Floor Courtroom C Judge Laurel Beeler." Opposition, ECF No. 123. The court construes this document as an opposition to the ACSO Defendants' motion because they noticed their motion for hearing at 9:30 a.m. on January 16, 2014. The full, substantive text of her opposition reads as follows:

> The Plaintiff Kayle L. Howard hereby provide[s] the following case management statement to the court for the upcoming case management motion hearing conference on January 16, 2014. I have already submitted all of the relevant issues in my First

UNITED STATES DISTRICT COURT
For the Northern District of California

Amended Complaint.  I will have supporting documentation of any issues in question.  I will be reporting to Courtroom C on the 15th Floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct[].

. . .

I am the only one affiliated with any and everything pertaining to me in every [illegible] and all aspects of my business.

Opposition, ECF No. 123 at 1.

That same day, even though they had previously answered Ms. Howard's original complaint, the San Pablo Defendants filed a motion to dismiss her First Amended Complaint pursuant to Rule 12(b)(6).  San Pablo Defendants' Motion to Dismiss FAC, ECF No. 118.  Given the procedural posture, they stated that the court alternatively could consider their motion one for judgment on the pleadings pursuant to Rule 12(c).  *Id.* at 5 n.3.  Given this procedural posture, as well as the identical legal standards for considering a Rule 12(b)(6) motion and a Rule (c) motion, the court will consider the San Pablo Defendants' motion to dismiss under Rule 12(b)(6).  Ms. Howard did not file an opposition to this motion, *see* Statement of Non-Opposition, ECF No. 124, but the court nevertheless considers her December 12, 2013 filing as an opposition to the San Pablo Defendants' motion, as it incorporates by reference the issues raised in her First Amended Complaint, *see* Opposition, ECF No. 123.

On January 16, 2014, the court heard oral argument from the parties.  12/16/2014 Minute Order, ECF No. 125.

## ANALYSIS

## I.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In addition, courts may consider documents attached to the complaint.  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).  However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II.  APPLICATION

### A.  Ms. Howard's § 1983 False Arrest and False Imprisonment Claims Must Be Dismissed

Ms. Howard once again brings a claim for false arrest and false imprisonment in violations of her Fourth Amendment rights.  To prevail on such claims, Ms. Howard must "demonstrate that there was no probable cause to arrest [her]."  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (citing *George v. City of Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992)).  Probable cause exists where an officer has "reasonably trustworthy information sufficient to warrant a prudent person in believing that plaintiff had committed a crime."  *United States v. Butler*, 74 F.3d 916, 920

UNITED STATES DISTRICT COURT
For the Northern District of California

1   (9th Cir. 1996) (quoting *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990)).  An arrest

2   pursuant to a valid warrant ordinarily satisfies this standard and thus is consistent with the Fourth

3   Amendment.  *See Baker v. McCollan*, 443 U.S. 137, 143 (1979).

4        The court previously dismissed these claims with respect to the ACSO Defendants and explained

5   as follows:

6            It is undisputed that Ms. Howard was booked into Santa Rita Jail based on the
             warrant issued by Judge White.  Whatever Fourth Amendment issues attend the

7            issuance of the warrant (i.e., the alleged false information that supported the issuance
             of the warrant), those issues are about the San Pablo Defendants, not about the ACSO

8            deputies who allegedly arrested and booked Ms. Howard on the warrant.  She says
             that she sued the ACSO Defendants because "she does not know if . . . [they] or the

9            City of San Pablo issued a warrant[] based on false information" and "obviously one
             or the other is liable for injuries."  Complaint, ECF No. 1 ¶ 22.  But those conclusory

10           allegations are insufficient to establish a claim against the ACSO Defendants.
             Indeed, the warrant was signed by Detective Neese, one of the San Pablo Defendants.

11
             In an abundance of caution, the court **DISMISSES WITHOUT PREJUDICE**

12           Ms. Howard's Fourth Amendment claims.  On the face of the complaint, the court
             cannot see how a claim could be stated against arresting and booking deputies at

13           Santa Rita Jail.  But if there is some connection of them to the alleged false
             information in the affidavit that supported the issuance of the arrest warrant, the court

14           gives Ms. Howard until November 7, 2013 to file an amended complaint.  The court
             suggests to Ms. Howard that at least based on her allegations, the ACSO Defendants

15           do not seem to have a nexus to the issuance of the warrant.

16   10/16/2013 Order, ECF No. 103 at 6 (emphasis in original).

17       With this reasoning in mind, the ACSO Defendants point out that Ms. Howard has not alleged

18   any additional facts in her First Amended Complaint that would tie the ACSO or Deputies Dalisay

19   or Cullen to the issuance of the warrant for her arrest.  While she does allege that  "all parties

20   involve[d] knew I had [n]o parts in any [c]riminal [a]ct[ion] being done prior to" March 11, 2010, *id.*

21   at 2, this statement is conclusory, and she alleges no facts to show, or even suggest, that the ACSO

22   Defendants had anything to do with the issuance of the warrant or acted with deliberate indifference

23   to her rights.  *See Pierson v. Ray*, 386 U.S. 547, 555-557 (1967) ("the defense of good faith and

24   probable cause" generally is available to police officers in an § 1983 action against them for false

25   arrest and imprisonment; *accord Coverdell v. Dep't of Social & Health Servs.*, 834 F.2d 758,

26   764–65 (9th Cir. 1987) (recognizing that "persons who faithfully execute valid court orders" are

27   "integral parts of the judicial process" and therefore are covered by quasi-judicial immunity).

28       Moreover, to the extent that Ms. Howard alleges that she was not the forgery suspect identified

1   in the warrant, and thus there was no probable cause for her arrest, her claims fail because she was

2   later convicted of the criminal acts upon which the warrant was based.  As Defendants point out, in

3   *Heck v. Humphrey*, 512 U.S. 477(1994), the Supreme Court held that

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would render a conviction or
> sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into question by a
> federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for
> damages bearing that relationship to a conviction or sentence that has not been so
> invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks
> damages in a § 1983 suit, the district court must consider whether a judgment in favor
> of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the plaintiff can demonstrate that
> the conviction or sentence has already been invalidated.  But if the district court
> determines that the plaintiff's action, even if successful, will not demonstrate the
> invalidity of any outstanding criminal judgment against the plaintiff, the action
> should be allowed to proceed, in the absence of some other bar to the suit.

12   *Id.* at 486-87.  Here, a judgment in favor of Ms. Howard on these claims would amount to a finding

13   that there was no probable cause to arrest her for forgery, and this necessarily would imply the

14   invalidity of her conviction.  Because Ms. Howard has not demonstrated that her conviction has

15   already been invalidated, under *Heck*, her claims must be dismissed.

16       Finally, to the extent that Ms. Howard brings a claim against Officer Smith for providing

17   allegedly false information to Judge White, her claim fails.  While numerous courts have recognized

18   false arrest claims under § 1983 on the basis of an unlawfully-issued arrest warrant, *see KRL v.*

19   *Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) ("To support a § 1983 claim of judicial deception, a

20   plaintiff must show that the defendant deliberately or recklessly made false statements or omissions

21   that were material to the finding of probable cause."); *United States v. Stanert*, 762 F.2d 775, 781

22   (9th Cir. 1985) ("the Fourth Amendment mandates that a defendant be permitted to challenge a

23   warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend

24   to mislead"), to prove such a "judicial deception claim," a plaintiff "must establish both [(1)] a

25   substantial showing of the deliberate falsity or reckless disregard of the truth of the statements in the

26   affidavit and [(2)] the materiality of those statements to the ultimate determination of probable

27   cause," *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995).  The materiality determination is a

28   question for the court and "requires the plaintiff to demonstrate that the magistrate would not have

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    issued the warrant with false information redacted, or omitted information restored."  *Smith v.*

2    *Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (quotation marks and citation omitted).  Here, Ms.

3    Howard alleges nothing to demonstrate that Officer Smith committed deliberate falsity or acted with

4    reckless disregard of the truth of the statements in the arrest warrant affidavit.

5        Accordingly, for the reasons stated above, Ms. Howard's false arrest and false imprisonment

6    claims against all Defendants must be **DISMISSED WITH PREJUDICE**.

7    **B. Ms. Howard's § 1983 "Missing Valuables" Claim Must Be Dismissed**

8        Ms. Howard's other § 1983 claim is that when Deputies Dalisay and Culley arrested her and

9    took her to Santa Rita Jail, they did not remove an unauthorized person, presumably Mr. Barker,

10   who "did not live at her address" and who (she implies) stole her "valuables."  *See* Complaint, ECF

11   No. 1 ¶¶ 17, 21; First Amended Complaint, ECF No. 109 at 2.  She alleges that Deputies Dalisay

12   and Culley "illegally confiscat[ed] my keys to my vehicle and my residence and [told] me that I did

13   not need any key[s] to my property [and] then proceed[ed] to tell James Barker that he better stay in

14   my home[,] which I do not allow when I [am] not at home."  First Amended Complaint, ECF No.

15   109 at 2.  She does not allege that the ACSO Defendants stole her property.  *See generally*

16   Complaint, ECF No. 1; First Amended Complaint, ECF No. 109.  She claims that she was deprived

17   of her property in violation of her Fourteenth Amendment procedural due process rights.

18       The court previously dismissed this claim because she has an adequate post-deprivation remedy

19   available to her under California law.  10/16/2013 Order, ECF No. 103 at 7-8.  As the court

20   explained:

21           Ordinarily, due process of law requires notice and an opportunity for some kind of
     hearing prior to the deprivation of a significant property interest. *See Memphis Light,*

22   *Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978).  But neither the negligent nor
     intentional deprivation of property states a due process claim under § 1983 if the
     deprivation was random and unauthorized. *See Parratt v. Taylor*, 451 U.S. 527, 535-

23   44 (1981) (state employee negligently lost prisoner's hobby kit), overruled in part on
     other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*,

24   468 U.S. 517, 533 (1984) (intentional destruction of inmate's property).  The
     availability of an adequate state post-deprivation remedy, *e.g.*, a state tort action,

25   precludes relief because it provides sufficient procedural due process. *See Zinermon
     v. Burch*, 494 U.S. 113, 128 (1990) (where state cannot foresee, and therefore provide

26   meaningful hearing prior to, deprivation statutory provision for post-deprivation
     hearing or common law tort remedy for erroneous deprivation satisfies due process);

27   *King v. Massarweh*, 782 F.2d 825, 826 (9th Cir. 1986) (same).  As the ACSO
     Defendant's point out, California law provides such an adequate post-deprivation

28

1    remedy.  *See Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal.
2    Gov't Code §§ 810–895).  Thus, because Ms. Howard cannot state a § 1983 claim
     based on her "missing valuables," it must be dismissed.  *See Ervin v. Merced Police
3    Dep't*, No. 1:12–cv–1779 AWI GSA, 2012 WL 6517371, at *4 (E.D. Cal. Dec. 13,
     2012) (because California law provided for a postdeprivation remedy, the court
4    dismissed plaintiff's § 1983 claim based on his allegation that his property was taken
     during his arrest but never returned to him after he was released without bring
5    charged).  However, because it is possible that additional allegations could remedy
     this deficiency, *see id.* ("[W]here the state provides a meaningful postdeprivation
6    remedy, only authorized, intentional deprivations constitute actionable violations of
     the Due Process Clause."), it is **DISMISSED WITHOUT PREJUDICE**.

7    10/16/2013 Order, ECF No. 103 at 7-8 (emphasis in original).

8        Ms. Howard's new allegations do not save her claim.  She alleges nothing to suggest that the

9    deprivation was not random and unauthorized, and as the court pointed out previously and at the

10   January 16, 2014 hearing, she has an adequate post-deprivation remedy available to her under

11   California law.  Accordingly, the court **DISMISSES WITH PREJUDICE** Ms. Howard's

12   Fourteenth Amendment "missing valuables" claim.

13       **C. Ms. Howard's *Monell* Claim Must Be Dismissed**

14       The court previously dismissed Ms. Howard's Monell claim against the ACSO.  It explained:

15       Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where
         official policy or custom causes a constitutional tort.  *See Monell*, 436 U.S. at 690.
16       However, a city or county may not be held vicariously liable for the unconstitutional
         acts of its employees under the theory of *respondeat superior*.  *See Board of County
17       Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City
         of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).  To impose municipal liability under
18       § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the
         plaintiff possessed a constitutional right of which he or she was deprived; (2) that the
19       municipality had a policy; (3) that this policy amounts to deliberate indifference to
         the plaintiff's constitutional rights; and (4) that the policy is the moving force behind
20       the constitutional violation.  *See Plumeau v. School Dist. # 40 County of Yamhill*, 130
         F.3d 432, 438 (9th Cir. 1997).

21
22       Liability based on a municipal policy may be satisfied in one of three ways: (1) by
         alleging and showing that a city or county employee committed the alleged
23       constitutional violation under a formal governmental policy or longstanding practice
         or custom that is the customary operating procedure of the local government entity;
24       (2) by establishing that the individual who committed the constitutional tort was an
         official with final policymaking authority, and that the challenged action itself was an
25       act of official governmental policy which was the result of a deliberate choice made
         from among various alternatives; or (3) by proving that an official with final
26       policymaking authority either delegated policymaking authority to a subordinate or
         ratified a subordinate's unconstitutional decision or action and the basis for it.  *See
27       Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

28       Ms. Howard's conclusory allegations do not establish a claim against the
         individual sheriffs, and thus they fail against the ACSO on a *Monell* theory.  Even if

**UNITED STATES DISTRICT COURT**
For the Northern District of California

C 10-05655 LB
ORDER

12

UNITED STATES DISTRICT COURT
For the Northern District of California

1    she stated a claim against the individuals, her allegations are the mere recitation of
     the basic elements of a *Monell* claim that do not suggest any plausible claim for
2    relief. *See AE ex rel. Hernandez v. City of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).
     Still, given the court's dismissal without prejudice of the claims against Deputies
3    Dalisay and Cullen, the court **DISMISSES WITHOUT PREJUDICE** the *Monell*
     claim against the ACSO.
4

5    10/16/2013 Order, ECF No. 103 at 8-9 (emphasis in original).  In her First Amended Complaint, Ms.

6    Howard adds no new allegations that suggest that the ACSO is liable under *Monell*, and the court

7    has now dismissed with prejudice her claims against Deputies Dalisay and Cullen.  Thus, the court's

8    reason for dismissing her claim still applies.  Accordingly, Ms. Howard's Monell claim against the

9    ACSO is **DISMISSED WITH PREJUDICE**.

10                                    **CONCLUSION**

11       The court **GRANTS** Defendants' motions to dismiss as **DISMISSES WITH PREJUDICE** all

12   of Ms. Howard's claims.  The Clerk of the Court shall close the file.

13       **IT IS SO ORDERED.**

14   Dated: January 16, 2014                 _____
15                                           LAUREL BEELER
                                             United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28

C 10-05655 LB
ORDER